**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
WOLFGANG FUERST,

                Plaintiff,

        -against-

HANNELORE FUERST,

                Defendant.
-------------------------------------------------------X
-------------------------------------------------------X
HANNELORE FUERST,

                Plaintiff,

        -against-

WOLFGANG FUERST,

                Defendant.
-------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
10-CV-3941

**APPEARANCES:**

**Seligman & Seligman**
*Attorneys for the plaintiff/counterclaim defendant*
70 Main Street
Kingston, NY 12401
      By: Delice F. Seligman, Esq., Of Counsel

**Carway & Flipse, Esqs.**
*Attorneys for the defendant/counterclaim plaintiff*
194 Old Country Road
Mineola, NY 11501
    By: Adrienne F. Hausch, Esq., Of Counsel

**SPATT, District Judge**.

Wolfgang Fuerst ("Wolfgang" or "the Plaintiff") commenced this action against his now former wife Hannelore Fuerst ("Hannelore" or "the Defendant") seeking economic and emotional damages based on her alleged misconduct during their divorce proceeding. The

1

Defendant counterclaimed against Wolfgang for economic and emotional damages and filed a motion for sanctions pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 11 based on his commencement and continued prosecution of the instant action. After a judgment of divorce was entered, the Plaintiff withdrew his complaint in this action.

Presently before the Court are the following motions: (1) the Defendant's motion for sanctions pursuant to Fed. R. Civ. P. 11; and (2) the Plaintiff's motion to restore his previously withdrawn complaint and to amend the complaint to add attorney Adrienne F. Hausch as a defendant. For the reasons set forth below, the Court sua sponte dismisses the counterclaims and denies the motion to restore and amend the complaint for lack of subject matter jurisdiction. In addition, the Court grants in part and denies in part the Defendant's motion for sanctions.

## I. BACKGROUND

The parties in this action are represented by the same attorneys who represented them in the underlying divorce proceeding, namely Delice F. Seligman, Esq. of Seligman & Seligman for Wolfgang, and Adrienne F. Hausch, Esq. of Carway & Flipse, Esqs for Hannelore. Both the parties and their attorneys have filed numerous and lengthy affidavits recounting their version of the facts of this case, including the past history of the case and opinions about matters that are not only not relevant to the instant proceeding, but are unnecessarily inflammatory. The Court will limit its summary of the facts to those allegations relating to the divorce proceeding and the instant case that are directly relevant.

On September 1, 1967, Wolfgang and Hannelore Fuerst were married in Germany. In 1974, the parties moved to New York, where they resided from 1974 until in or about 2008. At some point in 2008, the parties allegedly agreed that, for financial reasons, Wolfgang would

move back to Germany, while Hannelore would stay in the United States for a few more years before eventually returning to Germany.

On November 7, 2008, Hannelore commenced a divorce proceeding against her husband by an order to show cause for pendente lite relief in the New York State Supreme Court, Nassau County under Index Number 203114/08 (the "divorce proceeding"). The divorce proceeding was assigned to the Honorable Vito DeStefano. On November 12, 2008, Justice DeStefano signed the order to show cause making it returnable on November 24, 2008. In addition, *ex parte*, Justice DeStefano placed certain restraints on assets including "the proceeds of the marital residence, the proceeds of a mortgage issued to the parties' adult child and the proceedings of certain brokerage accounts". (Counterclaim Complaint ¶ 43; Order to Show Cause dated November 12, 2008, Ex. E to the Hausch Affidavit dated November 23, 2010 ("Hausch Aff.").) Although the parties dispute the circumstances involving Wolfgang's consent, there is no dispute that, on November 24, 2008, Wolfgang executed certain stipulations agreeing to continue or modify the restraints on marital and certain other property during the pendency of the divorce proceeding. (See Hausch Aff., Exs. F & G.)

In November 2009, an inquest was conducted as to the grounds of the divorce. Following the inquest, the court held the entry of judgment of divorce in abeyance pending the resolution of issues with regard to the equitable distribution of the parties' property. In particular, throughout the proceeding, the parties engaged in discovery involving the heavily contested issue of whether Wolfgang had undisclosed hidden assets. On November 19, 2009, during the trial with regard to the equitable distribution of the assets, the parties entered into an oral stipulation on the record regarding the distribution of the assets. At that time, Wolfgang's counsel, Ms. Seligman, stated on the record that she did not agree with the terms of the

3

settlement and that Wolfgang had agreed to the proposed distribution against her advice. Justice DeStefano directed the parties to reduce the stipulation to writing. Hannelore's attorney, Ms. Hausch, stated that she would circulate the stipulation and have it signed by all parties by January 15, 2010, and that she would enter into a stipulation of discontinuance by November 20, 2009, the day after the hearing. (See November 19, 2009 Transcript, Seligman Aff., Ex. D.) Following the trial in November of 2009, Wolfgang moved back to Germany.

Although a form of the stipulation of settlement was reduced to writing, it was never signed by Wolfgang and Ms. Hausch never filed a stipulation of discontinuance. There is a significant dispute as to the circumstances surrounding the parties' failure to execute the stipulation of settlement and to discontinue the action. Ms. Hausch contends that Wolfgang moved back to Germany without signing the stipulation, while Ms. Seligman contends that she was never provided a copy of the stipulation of settlement for Wolfgang to sign. In addition, Ms. Seligman contends that although Ms. Hausch prepared a stipulation of discontinuance, which Ms. Seligman signed, Ms. Hausch chose not to file it with the court.

In or about March of 2010, Hannelore moved to have the divorce proceeding restored to the court's trial calendar. At an unspecified time, Justice DeStefano apparently recused himself from the case and the matter was reassigned to the Honorable Robert A. Bruno. By order dated June 4, 2010, Justice Bruno held that the parties November 19, 2009 stipulation was unenforceable. Justice Bruno scheduled a new trial on the equitable distribution issues to commence on September 1, 2010.

On August 25, 2010, Wolfgang filed an emergency application with the New York State Appellate Division, Second Department, seeking to stay the trial in the divorce proceeding. This application was denied. Subsequently, on August 27, 2010, Wolfgang commenced the instant

4

action against Hannelore in federal court asserting claims for abuse of process and intentional infliction of emotional distress based on Hannelore's conduct in the commencement and prosecution of the divorce proceeding. In the complaint, Wolfgang sought damages for emotional trauma, loss of income based on the restraints imposed on him by the *ex parte* orders, and the costs expended in litigating the divorce proceeding.

On September 1, 2010, the day the trial was set to begin in the divorce proceeding, the parties entered in to a Stipulation of Settlement (the "Settlement"). (See Counterclaim Complaint, Ex. A.) Article XIX, paragraphs two and three of the Settlement state in relevant part that:

> 2. Except for the obligations, promises and Stipulations herein set forth and to be performed by the parties hereto which are hereby expressly reserved, each of the parties hereto for himself and herself and for his or her legal representatives hereby forever releases and discharges the other, and his or her heirs and legal representatives, from any and all debts, sums of money, accounts, contracts, claims, causes or causes of action, suits dues, reckoning, bonds, bills, specialties, covenants, controversies, Stipulations, promises, damages, judgments, extends, executions and demands whatsoever, in law or in equity which each of them had, now has or hereafter can, shall or may have, by reason of any matter from the beginning of the world to the execution of this Stipulation.
> 3. Except as otherwise expressly set forth herein, each party hereby remises, release and forever discharges the other from all causes of action, claims rights and demands whatsoever, in law or in equity, known or unknown, past, present or future, which either of the parties hereto ever had, or now or hereafter may have, against the other, including (without limitation) all claims with respect to all marital property as that term is used in Domestic Relations Law Section 236 and as interpreted or arising out of the marital relationship, except any cause of action for divorce, annulment or separation, and any defenses thereto in any pending or future action and except any cause of action arising out of or in connection with the breach of this Stipulation.

(Id. at 34–35) Also on September 1, 2010, Wolfgang consented to the issuance of the divorce decree.

5

On September 2, 2010, Ms. Hausch sent a letter to Ms. Seligman asking whether "[i]n view of the settlement of the matrimonial action . . . [she] intend[ed] to withdraw [the] federal action". (Hausch Aff., Ex. K.) However, Ms. Seligman states that, to the best of her knowledge, she does not recall receiving this letter.

After Wolfgang failed to withdraw the complaint in this action, Hannelore filed an Answer and Counterclaim Complaint on September 24, 2010 asserting the following claims against Wolfgang based on the commencement of the federal action: (1) abuse of process; (2) breach of the Settlement; (3) negligent infliction of emotional distress; and (4) intentional infliction of emotional distress. On January 24, 2011, Hannelore filed a motion for sanctions pursuant to Fed. R. Civ. P. 11 alleging that the complaint was frivolous and should have been withdrawn following the execution of the Settlement. That same day, Hannelore also filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12 for lack of jurisdiction based on the executed Settlement and also the failure to state a claim.

At this point, partially due to the Court's error, the procedural history of the instant action gets complicated. After receiving the final judgment of divorce on February 2, 2011, Wolfgang filed a Notice of Withdrawal in the instant action, withdrawing his complaint. On February 17, 2011, the Court "so ordered" the Notice of Withdrawal and, despite the existence of the counterclaims and the motion for sanctions, marked the case closed. However, upon a motion by Hannelore, on March 21, 2011, the Court issued an order: (1) vacating the portion of the February 17, 2011 order closing the case; (2) directing the Clerk of the Court to reopen the case; and (3) affording Wolfgang twenty days to respond to the pending counterclaim and/or the Rule 11 motion for sanctions. On May 10, 2011, Wolfgang filed a motion to continue, which sought to restore the initial complaint and amend the complaint to add claims directly against Ms.

6

Hausch for abuse of process, violations of New York Judiciary Law § 487, and intentional infliction of emotional distress. The proposed amended complaint also states that, since the commencement of this action, Hannelore has returned to Germany to live.

Presently pending before this Court are Hannelore's motion for sanctions, and Wolfgang's motion to restore and amend the complaint. However, upon review of the parties' submissions, the Court has determined that it lacks subject matter jurisdiction over any dispute between the parties. As a result, the Court denies Wolfgang's motion to restore and amend the complaint, and *sua sponte* dismisses Hannelore's counterclaims. The Court will address the issue of subject matter jurisdiction and the sanctions motion separately below.

## II. DISCUSSION

### A. As to the Court's Subject-Matter Jurisdiction

The parties assert that this Court has jurisdiction over the disputes in this case pursuant to 28 U.S.C. § 1332(a), based on the parties diversity. At the time the complaint and counterclaim complaint were filed, Hannelore was a resident of the state of New York and Wolfgang, who is a dual citizen of the United States and Germany, was a resident of Germany. Although Hannelore now resides in Germany, because she moved to Germany after this action was commenced, it does not factor into the Court's jurisdictional analysis. See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570, 124 S. Ct. 1920, 1924 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'") (quoting Mollan v. Torrance, 9 Wheat. 537, 539, 6 L. Ed. 154 (1824)). As set forth below, because Wolfgang is a dual citizen of the United States and Germany, the Court lacks subject matter jurisdiction over this case.

Federal district courts are courts of limited jurisdiction, and, at all times, are obligated to be assured of their subject matter jurisdiction over matters before them. Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont, 565 F.3d 56, 62–63 (2d Cir. 2009) ("'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress.") (quoting Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978)). Although neither party has raised a question as to this Court's jurisdiction, "it is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." United Food & Commercial Workers Union v. Centermark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994) (internal quotation marks and citation omitted). If the Court finds that subject matter jurisdiction is lacking, "dismissal is mandatory". Id.; see also Durant, 565 F.3d at 62–63 ("If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action sua sponte.") (citing Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152, 29 S. Ct. 42, 53 L. Ed. 126 (1908)).

Section 1332(a) provides in relevant part that diversity jurisdiction exists over civil actions between: (1) "citizens of different States" and (2) between "citizens of a State and citizens or subjects of a foreign state". 28 U.S.C. § 1332(a)(1) & (2). As the Supreme Court has noted "[i]n order to be a citizen of State within the meaning of the diversity statute, a natural person must be both a citizen of the United States *and* be domiciled within the state." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U .S. 826, 828, 109 S. Ct. 2218, 2220, 104 L. Ed. 893 (1989) (emphasis in original).

Although Wolfgang is a citizen of both Germany and the United States, it is the general consensus among the courts—including the Second Circuit—that, where a party has dual citizenship, [i]n matters of diversity jurisdiction American citizenship will determine diversity". Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991); see also Frett-Smith v. Vanterpool, 511 F.3d 396, 400 (3d Cir. 2008); Coury v. Prot, 85 F.3d 244, 247 (5th Cir. 1996); Mutuelles Unies v. Kroll & Linstrom, 957 F.2d 707, 711 (9th Cir. 1992); Sadat v. Mertes, 615 F.2d 1176, 1187 (7th Cir. 1980). The rationale behind this rule is that "the dual citizen should not be allowed to invoke alienage jurisdiction because this would give him an advantage not enjoyed by native-born American citizens". Coury, 85 F.3d at 250. Furthermore, in the situation where a United States citizen is domiciled abroad, he is considered neither a citizen of any state within the United States, nor a citizen or subject of a foreign state. See Herrick Co., Inc. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2001). Thus, where a United States citizen is domiciled abroad at the time an action is commenced, § 1332(a) does not provide the Court with jurisdiction over the suit. See id. As a result, "diversity jurisdiction may be properly invoked only when a dual citizen's domicile, and thus his citizenship, is in a state diverse from that of adverse parties." Coury, 85 F.3d at 250.

Although domiciled in New York from 1974 to 2008, the parties do not dispute that, in 2008, Wolfgang decided to move back to Germany permanently. Indeed, the parties were in the process of selling their marital home when Hannelore commenced the divorce proceeding in November of 2008. Subsequently, in or around November of 2009, Wolfgang moved to Germany, where he was domiciled when he commenced this action in August of 2010, and when the counterclaims were filed against him in September of 2010. Thus, because Wolfgang was a United States citizen domiciled in Germany at the time this action was commenced, he could not

9

sue or be sued in federal court. Therefore, regardless of whether Hannelore is an American citizen, German citizen, or dual citizen, diversity jurisdiction under § 1332(a) would be improper. See Lemos v. Pateras, 5 F. Supp. 2d 164, 165 (S.D.N.Y. 1998) (holding that because the plaintiff, who was a dual citizen of Greece and the United States, was not a domiciled in the United States "she [was] a citizen of no state for the purposes of diversity jurisdiction"); Lehman Gov't Secs. v. Pickholz, No. 95-CV-7744, 1996 WL 447995, at *2 (S.D.N.Y. 1996) (holding that because the plaintiff was a dual citizen of the United States and Israel and a resident of Israel, "he is not a citizen of a state [and] he cannot sue a citizen of state in the absence of federal question jurisdiction"); see also Frett-Smith, 511 F.3d at 400; cf. Foroughi v. Am. Airlines, Inc., No. 11-CV-4883, 2011 WL 5979716, at *2 (S.D.N.Y. Nov. 30, 2011) ("Even if one plaintiff is a foreign citizen, the presence of a plaintiff who is a U.S. citizen domiciled abroad does not allow the maintenance of the action on the basis of diversity.") (citing Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 69 (2d Cir. 1990)).

Finally, even assuming that although he was physically located in Germany, Wolfgang was still a New York domiciliary at the time he commenced this action, jurisdiction would still be lacking because Wolfgang and Hannelore would have both been citizens of the State of New York.

Accordingly, the Court denies Wolfgang's motion to restore and amend the complaint and sua sponte dismisses the counterclaim complaint for lack of subject matter jurisdiction. In so holding, the Court takes no position on the relative merits of any of the parties' claims.

**B. As to the Motion for Sanctions**

The Defendant has moved for sanctions against the Plaintiff and the Plaintiff's attorney, Delice Seligman, Esq., pursuant to Fed. R. Civ. P. 11 ("Rule 11"), asserting that: (1) the

complaint was filed for the improper purpose of harassing the Defendant; (2) the claims asserted in the complaint were frivolous and without merit; and (3) the complaint should have been withdrawn after the Settlement was signed.

Rule 11(b) of the Federal Rules of Civil Procedure states that an attorney who presents "a pleading, written motion, or other paper" to the court thereby "certifies" that to the best of his knowledge, information, and belief formed after a reasonable inquiry, the filing is: (1) not presented for any improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) either supported by evidence or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery". Fed. R. Civ. P. 11(b). In general, "the standard for triggering the award of fees under Rule 11 is objective unreasonableness." Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000). This "standard is appropriate in circumstances where the lawyer whose submission is challenged by motion has the opportunity, afforded by the 'safe harbor' provision, to correct or withdraw the challenged submission." In re Pennie & Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003). The Second Circuit has cautioned that Rule 11 sanctions should be "made with restraint", Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 333 (2d Cir. 1999), and, even where a court determines that Rule 11(b) has been violated, the decision whether to impose sanctions is not mandatory, but rather is a matter for the court's discretion, Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004).

As an initial matter, although the Court is dismissing the action because it lacks subject matter jurisdiction, it still retains "the power to determine collateral issues, such as the appropriateness of sanctions." Perpetual Secs., Inc. v. Tang, 290 F.3d 132, 141 (2d Cir. 2002).

11

First, the Defendant alleges that sanctions are warranted as against the Plaintiff pursuant to Rule 11(b)(1) because the complaint was filed with the improper purpose of harassing the Defendant. The Court will not delve into the subjective motivations of parties involved in an emotionally-charged matrimonial dispute. As a result, the Court denies the Defendant's motion for sanctions on this ground.

Next, the Defendant contends that sanctions are appropriate as against the Plaintiff's attorney pursuant to Rule 11(b)(2) because the Plaintiff's attorney failed to make a reasonable inquiry into the following causes of action asserted in the complaint: (1) loss of income; (2) attorney's fees; (3) intentional infliction of emotional distress; (4) abuse of process; and (5) malicious prosecution—a cause of action that the Court notes is not asserted in the complaint. The Court has reviewed the parties' submissions in this regard and exercises its discretion to decline to impose sanctions with respect to any of these alleged Rule 11 violations.

Finally, the Defendant contends that the Court should sanction the Plaintiff's attorney for failing to withdraw the complaint following the Plaintiff's execution of the Settlement on September 1, 2010. The Court agrees.

As an initial matter, the Defendant's contention that sanctions are warranted relies on the presumption that the Settlement effectuated a release of the Plaintiff's claims. A review of the Settlement supports this presumption. The Settlement explicitly provides that the parties agree to release and discharge "any and all . . . causes or causes of action, [and] suits . . . in law or in equity which each of them had, now has or hereafter can, shall or may have, by reason of any matter from the beginning of the world to the execution of this Stipulation" and, subject to certain exceptions not applicable here, "all causes of action, claims rights and demands whatsoever, in law or in equity, known or unknown, past, present or future, which either of the

12

parties hereto ever had, or now or hereafter may have, against the other . . . arising out of the marital relationship". (Settlement at 34–35.) There is no indication that these provisions, which explicitly applied to then existing actions and claims, were not applicable to the instant action, which was pending at the time the Settlement was signed. The Plaintiff's attorney fails to cite any authority or argument for why the Plaintiff's claims against the Defendant are not subject to this agreement, or why these provisions should not be enforced. Accordingly, the Court finds that the Plaintiff released all his claims asserted in the complaint when he signed the Settlement, and therefore there was no legal or factual basis to assert those claims after September 1, 2010.

"It is well established that 'Rule 11 does not impose a continuing obligation on the presenter to update, correct or withdraw any pleading, written motion or other paper which, when presented, satisfies the requirements of the Rule.'" Carlton Group, Ltd. v. Tobin, No. 02-CV-5065, 2003 WL 21782650, at *6 (S.D.N.Y. July 31, 2003) (quoting Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse 125 (3d ed. 2000)); see also Stiefvater Real Estate, Inc. v. Hinsdale, 812 F.2d 805, 809 (2d Cir. 1987) ("[R]ule 11 deals exclusively with 'the certification flowing from the signature to a pleading, motion, or other paper in a law suit', and imposes no continuing duty on the parties or their attorneys.") (quoting Oliveri v. Thompson, 803 F.2d 1265, 1274 (2d Cir. 1986)). Accordingly, there is "no obligation to update a pleading, motion or other paper based on new information provided that the document met the requirements of Rule 11 when signed." Curley v. Brignoli Curley & Roberts, Assocs., 128 F.R.D. 613, 616 (S.D.N.Y.1989). Thus, because the Plaintiff filed the complaint <u>before</u> the Settlement was signed, the Plaintiff did not violate Rule 11 by not immediately withdrawing the complaint.

13

Nevertheless, "Rule 11 sanctions are appropriate where an attorney or party declines to withdraw a claim 'upon an express request by his or her adversary after learning that [the claim] was groundless.'" Carlton Group, 2003 WL 21782650, at *7 (quoting Calloway v. Marvel Entm't Group, 854 F.2d 1452, 1472 (2d Cir. 1988), rev'd. in part on other grounds, 493 U.S. 120, 110 S. Ct. 456, 107 L. Ed. 2d 438 (1989)); see also O'Malley v. New York City Transit Auth., 896 F.2d 704, 709 (2d Cir. 1990) ("[C]ontinuing to press an obviously meritless lawsuit does tend to indicate bad faith and further supports the imposition of a rule 11 sanction.").

The Settlement that serves as the basis for this motion was signed on September 1, 2010. On September 2, 2010, the Defendant's attorney sent a letter to the Plaintiff's attorney asking if the Plaintiff intended to withdraw the complaint in light of the settlement. This inquiry does not constitute a demand. However, on December 28, 2010, in accordance with the safe harbor provision of Rule 11(c)(2), the Defendant served a copy of the sanctions motion on the Plaintiff's attorney. Under this rule, the Plaintiff had 21 days to withdraw his complaint without consequences. See Fed. R. Civ. P. 11(c)(2). After the Plaintiff failed to withdraw the complaint, on January 24, 2011, the Defendant filed the instant motion for sanctions. The Plaintiff's withdrawal of the complaint on February 11, 2011, approximately 45 days after receiving the demand, does not afford the Plaintiff's attorney the protection of the safe harbor provision. There is no dispute that the Plaintiff's attorney was aware of the contents of the Settlement, and was aware that the Plaintiff signed the Settlement on September 1, 2010. Thus, it was incumbent on the Plaintiff to withdraw the complaint upon receipt of the Defendant's demand on December 28, 2010 because there was no longer any viable basis for asserting the claims.

The excuse offered by the Plaintiff's attorney for her failure to withdraw the complaint upon the execution of the Settlement is unavailing. In her affidavit opposing the motion for

sanctions, the Plaintiff's attorney states that she did not immediately withdraw the complaint following the execution of the Settlement because the Defendant had backed out of a previous stipulation of settlement during the divorce proceeding, and therefore the Plaintiff was hesitant to dismiss the complaint until he had a final judgment of divorce. (Seligman Aff., ¶ 53.) According to the Plaintiff's attorney, if the Defendant did not want to incur costs litigating the action after the Settlement was filed, she could have "sent [the Plaintiff's attorney] a stipulation extending her time to answer until she had served [the Plaintiff's attorney] the judgment of divorce". (Amended Affidavit of Delice Seligman dated May 10, 2011, ¶ 4.)

However, this excuse does not change the fact that, as of September 1, 2010, there was a signed Settlement agreement binding on both parties, discharging the claims in the complaint. It was incumbent upon the Plaintiff to withdraw the complaint upon receipt of a demand to do so. Regardless of whether the Plaintiff's concern about the Defendant's compliance with the Settlement was well-founded, permitting the Defendant and the Court to expend resources in a litigation that essentially was the Plaintiff's backup plan was an abuse of the legal system. Accordingly, the Court grants the Defendant's motion to sanction the Plaintiff's attorney for her failure to withdraw the complaint following the Defendant's December 28, 2010 demand.

With respect to the amount of sanctions, a court has "broad discretion in tailoring appropriate and reasonable sanctions under rule 11". O'Malley, 896 F.2d at 709; Lawrence v. Wilder Richman Sec. Corp., 417 F. App'x 11, 15 (2d Cir. 2010). The Defendant requests that the Court sanction the Plaintiff's attorney by requiring her to pay the Defendant's attorney's fees and costs associated with opposing the complaint, including the filing of the answer, counterclaim complaint, motion to dismiss and motion for sanctions. However, because the Court declines to award sanctions based on the Plaintiff's initial filing of the complaint, and

because the Defendant's counterclaim complaint was filed despite the absence of this Court's subject matter jurisdiction, the Court finds that the proposed sanction is not warranted.

Here, the sanctionable conduct that the Court seeks to deter is the maintenance and continuation of a lawsuit rendered meritless by events subsequent to its commencement, despite a demand of withdrawal. Pursuant to Rule 11(c)(2), if a party fails to withdraw the challenged document within 21 days of being served with a motion for sanctions, "the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion". Fed. R. Civ. P. 11(c). Accordingly, the Court finds that the appropriate sanction is for the Plaintiff's attorney to pay the attorney's fees and costs incurred by the Defendant in bringing and defending its motion for sanctions. The Defendant is directed to submit within 10 days of the date of this order, records reflecting the hours expended by her attorney and the costs incurred in filing and defending the motion for sanctions.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Counterclaim complaint is dismissed, and it is further

**ORDERED**, that the Plaintiff's motion to restore and amend the complaint is denied, and it is further

**ORDERED**, that the Defendant's motion for sanctions as against the Plaintiff based on his alleged improper purpose in filing the complaint and against the Plaintiff's attorney for filing a frivolous action is denied, and it is further

**ORDERED**, that the Defendant's motion for sanctions as against the Plaintiff's attorney based on the Plaintiff's failure to withdraw the complaint within the safe harbor provision provided by Rule 11(c)(2) is granted, and it is further

16

**ORDERED**, that the Court imposes sanctions on the Plaintiff's attorney, Delice Seligman, Esq., in an amount to be determined following the Defendant's submission of her costs and attorney's fees incurred in filing and litigating the motion for sanctions, and it is further

**ORDERED**, that the Defendant is directed to submit within 10 days of the date of this order, records reflecting the hours expended by her attorney and the costs incurred in filing and defending the motion for sanctions. The attorney for the Plaintiff is afforded an opportunity to respond to the amount of sanctions within five days of the receipt of the Defendant's application. No reply will be accepted.

**SO ORDERED.**
Dated: Central Islip, New York
December 9, 2011

                                                                                       _/s/ Arthur D. Spatt_
                                                                                         ARTHUR D. SPATT
                                                                        United States District Judge